IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01221-PAB-CBS

WATER PIK, INC., a Delaware corporation,

      Plaintiff,

v.

MED-SYSTEMS, INC., a Washington corporation,

      Defendant.

---

## ORDER

---

      This matter is before the Court on the Motion for Summary Judgment [Docket No. 63/65] filed by plaintiff Water Pik, Inc. and two Motions to Supplement the Record [Docket Nos. 126, 155] filed by defendant Med-Systems, Inc.  As a threshold matter, the Court grants defendant's motions to supplement the record.

## I.  INTRODUCTION

      On May 26, 2010, plaintiff Water Pik brought this declaratory judgment action against Med-Systems after Med-Systems opposed the registration of Water Pik's SinuSense™ mark before the Trademark Trial and Appeals Board ("TTAB").  *See* Docket No. 1.  Water Pik seeks: (1) a declaratory judgment of non-infringement of defendant's trademarks under 15 U.S.C. § 1114; (2) a declaratory judgment of non-infringement of defendant's alleged trade dress under 15 U.S.C. § 1125(a); (3) a declaratory judgment of no federal unfair competition under 15 U.S.C. § 1125(a); (4) a declaratory judgment of no trademark dilution under 15 U.S.C. § 1125(c); and (5) a

declaratory judgment finding that Water Pik has the right to register and use the SinuSense™ mark.

In response, Med-Systems alleges counterclaims against Water Pik for: (1) federal trademark infringement under 15 U.S.C. § 1114; (2) federal trade dress infringement under 15 U.S.C. § 1125(a); (3) unfair competition under 15 U.S.C. § 1125(a); (4) trademark dilution under 15 U.S.C. §1125(c); and (5) injunctive relief under 15 U.S.C. § 1116.

In its motion for summary judgment, Water Pik claims that, because Med-Systems cannot establish a likelihood of confusion and there have been no instances of actual confusion, the Court should enter summary judgment with respect to Med-Systems' counterclaims for trademark infringement and unfair competition. Additionally, Water Pik contends that, because Med-Systems' trade dress is not inherently distinctive nor has it acquired secondary meaning, Med-Systems' counterclaim for trade dress infringement fails as a matter of law.  Finally, Water Pik argues that the Court should enter summary judgment with respect to Med-Systems' trademark dilution claim because Med-Systems cannot establish that Sinu*Cleanse*® is a famous mark.  Water Pik also asserts that, if summary judgment is granted with respect to all of Med-Systems' counterclaims, then the Court should enter a final judgment in favor of Water Pik for all relief sought in the complaint.

## II.  BACKGROUND[1]

### A.   The Sinu*Cleanse*® Mark

Med-Systems was formed in 1997 by David Gallo and Dr. Diane Heatly.

Med-Systems sells sinus irrigation products utilized by customers to open and irrigate

nasal passages.  Med-Systems markets its products under the Sinu*Cleanse*® mark,

which was registered on November 24, 1998.  Docket No. 95-15 at 1.  Dr. Heatly and

Mr. Gallo independently created the Sinu*Cleanse*® mark and settled on the mark

because it best described the purpose of their product: cleansing sinuses.  Docket No.

57-1 at 3 (Heatly Dep. 12:16-21).

Between 1997 and 2007, Med-Systems' trade dress for Sinu*Cleanse*® products

depicted wavy lines and incorporated a red and blue color scheme.  Docket No. 95-2 at

18 (Gallo Dep. 186:7-10); Docket No. 57-2 at 25.  The Sinu*Cleanse*® mark was a

prominent feature on the trade dress as the "sinu" portion of the mark was highlighted in

standard block red font, Docket No. 57-2 at 8 (Gallo Dep. 185:21-22), while "Cleanse"

was italicized in blue font.  *Id.* at 9 (Gallo Dep. 186:22-25).

Med-Systems initially focused its business on the sale of neti pots[2]; however, it

now offers other sinus irrigation products such as saline refills and squeeze bottles.

Med-Systems' products are available on the internet and in pharmaceutical

departments nationwide.  Potential consumers usually encounter the Sinu*Cleanse*®

mark in its stylized form (i.e. with color theme and italics), but may also find the

---

[1]The following facts, unless otherwise indicated, are not in dispute.

[2]A neti pot is a nasal irrigation device, which uses salt and water solution to flush out the nasal passages.  *See* Docket No. 57-1 at 2 (Heatly Dep. 11:10-15).

non-stylized Sinu*Cleanse*® mark (i.e. without a color theme or italics) on Med-Systems'
website or other forms of advertising.

In November 2007, Med-Systems hired Masterson Marketing, Inc. ("Masterson")
to design and develop a new trade dress for Sinu*Cleanse*® products.  Med-Systems
desired a new "look and feel" for the Sinu*Cleanse*® product line.  Docket No. 57-5 at
40.  The partnership between Med-Systems and Masterson lasted until October 2010,
when it was terminated because of licensing disagreements.  Docket No. 57-2 at 23
(Gallo Dep. 222:14-16).  Med-Systems and Masterson are currently involved in
litigation, *Med-Systems, Inc. v. Masterson Marketing, Inc.*, 11-cv-0695-JLS-BLM (S.D.
Cal. 2011), regarding ownership of the copyrights for certain Sinu*Cleanse*® packaging.
*See* Docket No. 95-16.

Between November 2007 and October 2010, Med-Systems' Sinu*Cleanse*® trade
dress underwent several changes.  In 2008, Med-Systems modified the trade dress
because the company launched its own private label brand and, as a result, had two
versions of its sinus irrigation products for sale in stores.  The new version of the
Sinu*Cleanse*® trade dress had the prefix "Sinu" altered from the red font to a blue font.
Docket No. 57-2 at 15 (Gallo Dep. 194:11-13).

In 2009, Med-Systems' packaging again underwent significant changes.
Masterson provided Med-Systems with several package designs; however, some of
these models were never utilized and never appeared on store shelves.  *Id*. at 12 (Gallo
Dep. 191:18-20); Docket No. 57-4 at 3-6.

Notwithstanding the alterations made to its packaging, Med-Systems asserts that, from 2007 until early 2011, its trade dress was consistent and unique, incorporating a light blue and white theme of the sky, clouds, and a stream of water flowing through its packaging design.  Med-Systems alleges that its mark is not only unique, but that it is famous and has acquired secondary meaning.  Med-Systems claims that every year since 1997 it has spent 30% or more of its total sales on marketing and advertising, Docket No. 95-2 at 21 (Gallo Dep. 205:10-25), has advertised Sinu*Cleanse*® through channels such as television, radio, newspapers, and tradeshows, *see generally* Docket No. 95-10, and, most notably, Sinu*Cleanse*® had a feature on the Oprah Winfrey show with Dr. Mehmet Oz in December 2007.  *Id*. at 4.  Med-Systems states that, after the Oprah Winfrey show, it saw a sharp increase in its reputation and goodwill as evidenced by the rising sales of its neti pot.  *Id*. at 22.

Water Pik argues that Med-Systems' trade dress is not famous and has not acquired secondary meaning because a white and blue theme, which includes water is generic within the nasal products industry.  Moreover, Water Pik alleges that not only was Med-Systems' trade dress inconsistent, at times it was virtually identical to NeilMed's[3] trade dress.

### B.  The SinuSense™ Mark

Water Pik specializes in providing oral hygiene and consumer health products.  In 2008, Water Pik decided to expand its business into the sinus irrigation market.  At first, Water Pik sought to purchase Med-Systems in order to acquire Med-Systems'

---

[3]NeilMed is one of the leading producers in the sinus irrigation industry.  Docket No. 57-1 at 16 (Heatly Dep. 46:11-14).

Sinu*Cleanse*® sinus irrigation product line.  During the negotiations, Water Pik and

Med-Systems signed a confidentiality and non-disclosure agreement.  Med-Systems

thereafter supplied Water Pik with financial, marketing, sales, and product information.

However, the parties failed to reach an agreement and negotiations ended on

December 10, 2008.

After the breakdown in negotiations, Water Pik elected to create its own brand of

sinus irrigation products.  To achieve this goal, Water Pik retained the services of the

Sterling Rice Group and Blue Sky Strategies, who conducted consumer surveys to test

product packaging, potential trademarks, and the overall product design.  The Lynx

Report, Water Pik's model for its marketing strategy, is the result of Water Pik's

collaboration with these third party vendors.  The Lynx Report is based on a two-tiered

survey process designed to identify consumer segments most receptive to new nasal

wash products.  *See* Docket No. 58-3 at 7 n.8.  The first stage of the process

administered an omnibus survey with a nationally representative sample based on U.S.

Census data, and the second stage created a sampling plan for a national, in-depth

online survey ("A&U Survey").  *Id.*  Based on this market research, Water Pik created a

line of sinus irrigation products sold under the SinuSense™ mark.

In May 2009, Water Pik filed for federal registration of the SinuSense™ mark

with the United States Patent and Trademark Office ("USPTO").  Water Pik's mark was

published in the *Trademark Official Gazette* on October 13, 2009.[4]  Following the

---

[4] Once a mark is published in the *Trademark Official Gazette*, any party who
believes it will be damaged by the registration of the mark has thirty days to file a notice
of opposition with the TTAB.  Docket No. 58 at 14.

publication, Med-Systems filed an opposition to Water Pik's registration before the

TTAB.[5]  Despite Med-Systems' opposition, Water Pik made its SinuSense™ products

available to consumers in July 2010.  The SinuSense™ products are sold nationally at

Army and Air Force Exchange Service, Ahold, Albertsons, Amazon, CVS.com,

Drugstore.com, Hyvee, Walgreens, Walmart, and Zellers.

## III.  STANDARD OF REVIEW

Summary Judgment is appropriate under Rule 56 of the Federal Rules of Civil

Procedure "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is

"material" if under the relevant substantive law it is essential to the proper disposition of

the claim.  *Wright v. Abbot Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only

disputes over material facts can create a genuine issue for trial and preclude summary

judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997).  When reviewing a motion for summary judgment, a court must view the

evidence in the light most favorable to the nonmoving party.  *Id.*; *see McBeth v. Himes*,

598 F.3d 708, 715 (10th Cir. 2010).

A movant who bears the burden at trial must submit evidence to establish the

essential elements of its claim or affirmative defense.  *In re Ribozyme Pharms., Inc.*

---

[5]Med-Systems' claims before the USPTO are currently stayed pending the adjudication of the instant case.  *See* Docket No. 95-14.

*Sec. Litig.*, 209 F. Supp. 2d 1106, 1110 (D. Colo. 2002).  By contrast, if the movant

"does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the

summary judgment stage by identifying a lack of evidence for the nonmovant on an

essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252

F.3d 1111, 1115 (10th Cir. 2001).  The nonmoving party may not rest solely on the

allegations in the pleadings, but instead must designate "specific facts showing that

there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## IV.  ANALYSIS

### A.  Trademark Infringement and Unfair Competition

Under the Lanham Act, 15 U.S.C. § 1114(1), liability attaches when a person,

without consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable
> imitation of a registered mark in connection with the sale, offering for sale,
> distribution, or advertising of any goods or services on or in connection
> with which such use is likely to cause confusion, or to cause mistake, or to
> deceive.

15 U.S.C. § 1114(1)(a).  Thus, in order for Med-Systems to establish trademark

infringement and unfair competition under the Lanham Act, Med-Systems must prove:

(1) that Sinu*Cleanse*® is a valid and protectable mark; (2) that Water Pik used its

SinuSense™ mark in commerce without Med-Systems' consent; and (3) that there is a

likelihood of confusion between Sinu*Cleanse*® and SinuSense™.  *Utah Lighthouse*

*Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir.

2008) ("Trademark infringement is a type of unfair competition; the two claims have

virtually identical elements and are properly addressed together as an action brought

under . . . section 43 of the Lanham Act.").  It is undisputed that Med-Systems'

Sinu*Cleanse*® mark is valid, Docket 57-2 at 24, and it is also undisputed that Water

Pik's SinuSense™ products are used in commerce.  Docket No. 58 at 2, ¶ 7.  Thus, for

Med-Systems to succeed on its counterclaims, it must establish that a likelihood of

confusion exists between the two marks.  *See Coherent, Inc. v. Coherent Tech., Inc.*,

935 F.2d 1122, 1124 (10th Cir. 1991) (noting the Tenth Circuit has held that the party

with an incontestable mark must still show likelihood of confusion as an element of an

infringement claim).

Whether the use of an allegedly infringing mark is likely to cause confusion is a

determination of fact, but can be decided on summary judgment where appropriate.

*See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir.

1999) ("Courts retain an important authority to monitor the outer limits of substantial

similarity within which a jury is permitted to make the factual determination whether

there is a likelihood of confusion.") (internal quotation marks and citation omitted).  In

determining whether a likelihood of confusion exists between two marks, courts

consider the following non-exhaustive factors: (1) the degree of similarity between the

marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual

confusion; (4) similarity of products and manner of marketing; (5) the degree of care

likely to be exercised by purchasers; and (6) the strength or weakness of the marks.  *Id*.

All of these factors must be considered as an interrelated whole because the list of

factors is not exhaustive and no single factor is dispositive.  *Team Tires Plus, Ltd. v.

Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).  In every case, the key inquiry is

9

whether the consumer is likely to be deceived or confused by the similarity of the marks. *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998) (citation omitted).  If the nonmovant demonstrates a genuine issue of material fact regarding the likelihood of confusion, summary judgment is not appropriate. *King of the Mountain Sports,* 185 F.3d at 1089.

### 1.   Similarity of Marks

The degree of similarity between marks is tested on three levels: sight, sound, and meaning. *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1530-31 (10th Cir. 1994).  The Court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side-by-side with the protected mark. *King of the Mountain Sports*, 185 F.3d at 1089.  The context of the marks as a whole must be evaluated as they are encountered by consumers in the marketplace. *Id*. at 1090.  In so doing, similarities are weighed more heavily than differences, particularly when the competing marks are used in virtually identical products packaged in a similar manner. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) (hereinafter "*Beer Nuts II*").  However, when the trade names are similar, if they are visually distinct, the likelihood of confusion is reduced. *Heartsprings*, 143 F.3d at 554.

Here, the relevant comparison is between Med-Systems' Sinu*Cleanse*® mark (the stylized logo) and Water Pik's SinuSense™ mark.  With regard to sight, both marks contain the prefix "sinu" in unstylized block lettering. *See* Docket No. 57-1 at 38-39.  As for the latter portions of the marks, consumers usually encounter Med-Systems' mark

with the term "Cleanse" italicized.  Docket No. 57-2 at 9 (Gallo Dep. 186:22-25).  On the other hand, Water Pik's "Sense" appears in unstylized block lettering.  Because Water Pik asserts that the use of the prefix "sinu" is ubiquitous in the sinus irrigation market, Docket No. 57-1 at 22,[6] and Med-Systems will not challenge a mark that solely utilizes the prefix "sinu," Docket No. 57-5 at 5-6 (Gallo Dep. 62:17-63:3), the sight inquiry will focus on the "*Cleanse*" and "Sense" portions of the marks.

Water Pik argues that the two marks are easily distinguishable because "*Cleanse*"' looks nothing like "Sense."  Docket No. 63 at 10.  In response, Med-Systems contends that "*Cleanse*" and "Sense" are easily confused as the letters "c" and "s" are often confounded and lead to misspellings such that "the word 'cleanse' is often spelled 'clense,' and the words 'sense' and 'cense' are often mistaken for each other."  Docket No. 95-13 at 2, ¶ 4.  Med-Systems also argues that the marks "Sinu*Cleanse*" and "SinuSense" differ over just a few letters: the former has a "cl" and an "a" while the latter has an "s."  *Id.*

After reviewing the facts in the light most favorable to Med-Systems, the Court believes that no reasonable jury would find the marks visually confusing.  The principal similarity of the two marks is the beginning word "sinu," which, for the reasons stated above, the Court will not take into account.  The word "Sense" has fewer letters and is more easily read than "*Cleanse*."  Moreover, the beginning letters of each word are significantly different visually.  Even if the letter "s" is often confused with the letter "c," as Med-Systems claims, but which the Court doubts, "s" and "cl" are considerably

[6]Some registered trademarks incorporating the prefix "sinu" include: sinucare, sinufit, sinu-mist, sinu-foam, sinuwave, and sinucoil.  *See* Docket No. 57-1 at 22-34.

different, which is how the reader's eye would naturally view the beginning of each word. Finally, Med-Systems' argument that the words differ in only a few letters is not persuasive since that is true of many words that are visually distinct. Thus, this degree of similarity weighs in favor of Water Pik.

With respect to sound, Water Pik argues that because "*Cleanse*" starts in a hard "kl" sound and ends with a hard "z," it sounds nothing like "Sense," which starts and ends with a soft "s" sound. Docket No. 63 at 10. Med-Systems responds that both marks sound similar because "'Cleanse' and 'Sense' have exactly the same two middle sounds and have almost exactly the same last sounds, [z] or [s]." Docket No. 95 at 11. The Court agrees with Water Pik. The two words are pronounced in distinctly different ways. No reasonable jury could conclude otherwise. Thus, this degree of similarity also weighs in favor of Water Pik.

Finally, Water Pik argues that the meanings of the marks differ because Med-Systems' Sinu*Cleanse*® mark means to "clean the sinuses" while Water Pik's mark has no meaning. Docket No. 63 at 10. Med-Systems states that, although they have different meanings, both marks convey the same notion to consumers: sinus related treatment. Docket No. 95 at 11.

It is undisputed that Dr. Heatly and Mr. Gallo believed that the term "Cleanse" stood for "cleansing" and conveyed such a meaning to potential consumers. Docket No. 95-1 at 4 (Heatly Dep. 12:16-21). Although Water Pik alleges the term "SinuSense" is meaningless, a factfinder could determine that the mark may have several different connotations. In some contexts, "sense" may mean to "detect automatically esp[ecially] in response to a physical stimulus" or "the faculty of perceiving by means of sense

12

organs."  Merriam-Webster's Collegiate Dictionary 1133 (11th ed. 2007).  More reasonably in the context of the mark "SinuSense™" the word "Sense" may suggest good judgment or a good decision.  *See* Docket No. 100-1 at 5 ("[t]he original positioning line in support of SinuSense was 'The Sensible Way to Healthier Sinuses.'").  However, regardless of whether "SinuSense" means a sensory perception, good judgment, or nothing, its meaning is different from cleansing the sinuses.  Once again, the Court finds that no reasonable jury could conclude otherwise.

On the issue of similarity, the sight, sound, and meaning associated with Sinu*Cleanse*® and SinuSense™ weigh in favor of Water Pik.  *See Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964, 973 (10th Cir. 2002); *King of the Mountain Sports*, 185 F.3d at 1091 (noting that similarity of the marks is the most important factor).

### 2.  *Intent to Copy*

Under this factor, a court must determine whether the alleged infringer had the intent to derive a benefit from the reputation or goodwill of an existing mark.  *King of the Mountain Sports*, 185 F.3d at 1091.  Proof that an alleged infringer chose a mark with the intent of copying the existing mark may, standing alone, justify an inference of a likelihood of confusion.  *John Allan Co. v. Craig Allen Co. LLC,* 540 F.3d 1133, 1139 n.4 (10th Cir. 2008).  "One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived . . . [and] all doubts must be resolved against him."  *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941 (10th Cir. 1983) (hereinafter "*Beer Nuts I*").

13

Med-Systems alleges that Water Pik created the SinuSense™ mark with an intent to benefit from the reputation and goodwill of Sinu*Cleanse*® products. First, Med-Systems argues that a factfinder could conclude that Water Pik had an intent to copy because it created its mark only after a failed attempt to acquire Med-Systems' Sinu*Cleanse*® product line. Docket No. 95 at 12. Second, Med-Systems asserts that a factfinder could infer an intent to copy because Water Pik chose a mark that is similar to Sinu*Cleanse*® despite having the "entire material universe" of symbols. *Id*. Third, Med-Systems cites an email sent by Michael Wakeman, Water Pik's Vice President of Marketing, on December 19, 2008, which states: "regarding squeeze bottle designs, let's pursue both a 'hybrid' of the NeilMed/SinuCleanse designs and a 'gooseneck' angular nozzle design." Docket No. 94 at 1. Med-Systems argues that a reasonable factfinder could conclude that Water Pik's goal was to derive a benefit from the goodwill or reputation of the Sinu*Cleanse*® mark. Water Pik denies any an intent to copy, noting that it utilized third party vendors and consumer focus groups to design a trademark for the sole purpose of preventing confusion with Sinu*Cleanse*®. Docket No. 63 at 11.

Given Water Pik's knowledge of the Sinu*Cleanse*® mark and its desire to purchase Med-Systems' product line, this factor weighs in favor of Med-Systems.

### 3.  *Actual Confusion*

Evidence of actual confusion is not necessary to prevail on a trademark infringement claim; however, "actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *King of the Mountain Sports*, 185 F.3d at 1092. Moreover, in the Tenth Circuit, "de minimus [sic] evidence of *actual* confusion

does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion in a trademark-infringement claim." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1135 n. 16 (10th Cir. 2003) (emphasis in original).  Additionally, "[p]robable confusion cannot be shown by pointing out that at someplace, at some time, someone made a false identification."  6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:14 (4th ed. 2011).

Med-Systems attempts to prove actual confusion with three incidents of alleged confusion.[7]  The first example involves a text message sent by Carl Walsh, a friend of Mr. Gallo, who told Mr. Gallo that he had seen an advertisement for Sinu*Cleanse*® on the Weather Channel.  Docket No. 95-10 at 1.  Med-Systems argues that, because it does not advertise Sinu*Cleanse*® products on the Weather Channel, Mr. Walsh must have been confused by an advertisement for Water Pik's SinuSense™.  *Id*.  Med-Systems' second example of actual confusion is an eBay auction item posted by Chichester's Medical Supply.  Docket No. 126 at 13.  The eBay auction displays Water Pik's SinuSense™ saline packets, but labels the product as "Sinucleanse 60 soothing Saline Packs Easy Pour Waterpik."  *Id*.  Med-Systems' third example of actual confusion is a signed affidavit by a consumer named Laurie Brooks.  Docket No. 155-1.  Ms. Brooks states that she is "aware of two neti pot brands–SinuCleanse and

---

[7] Med-Systems' supplemental evidence [Docket No. 126] presented a fourth example of confusion related to a blog called "Savvy Spending Mommas."  Docket No. 126 at 2.  The blog pictured a SinuSense™ product, but mistakenly captioned the product as "WaterPik SinuCleanse."  Docket No. 126 at 7.  Ms. Frazier, the author of the blog, stated that her mistake was a typographical error and that she was not confused with regard to SinuSense™ and Sinu*Cleanse*®.  Docket No. 143-1.  Accordingly, this evidence is not proof of actual confusion.  *See* MCCARTHY § 23:14.

SinuSense . . . [and is] still confused between SinuCleanse and SinuSense." *Id.* at 3. Med-Systems argues that these three instances establish that a genuine issue of fact exists as to actual consumer confusion between Sinu*Cleanse*® and SinuSense™. Docket No. 95 at 17.

Even after reviewing this evidence in a light most favorable to Med-Systems, the Court finds only de minimis evidence of actual confusion which does not establish a genuine issue of material fact regarding the likelihood of actual confusion. *See King of the Mountain Sports,* 185 F.3d at 1092 (finding seven examples of actual confusion was de minimis and did not support a finding that a genuine issue of material fact existed as to the likelihood of confusion); *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987) (upholding a district court finding that calls made to an executive vice president asking whether his Lardashe product was affiliated with Jordache was not sufficient evidence of actual confusion); *Heartsprings*, 143 F.3d at 557 (noting that evidence of confusion with regard to random acquaintances is de minimis because it does not indicate confusion among *consumers*).

Conversely, Water Pik asserts that its survey evidence shows that there is no likelihood of confusion between SinuSense™ and Sinu*Cleanse*®. *See Universal Money Ctrs.*, 22 F.3d at 1534 ("[s]urveys can be used as evidence of actual confusion."); *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 151(2d Cir. 2003) ("It is self-evident that the existence of actual confusion indicates a likelihood of consumer confusion."). Water Pik's survey was performed by Dr. Gary T. Ford. Docket No. 58-3 at 1. Dr. Ford conducted a nonprobability mall intercept survey examining the likelihood

16

of confusion between the SinuSense™ and Sinu*Cleanse*® marks.  *Id*. at 7.  Dr. Ford's

survey sample was comprised of male and female respondents between 18 and 64

years of age who had used a neti pot in the past six months for seasonal nasal allergies

or sinusitis and were likely to purchase a replacement neti pot in the next six months.

*Id*.  The respondents were randomly assigned into two groups, with the first group

exposed to the SinuSense™ neti pot and the second (control) group exposed to

NeilMed's NasaFlo® neti pot.  *Id*. at 6.

The results of the survey showed that only one of the 164 respondents in the first

group (0.6%) believed that SinuSense™ had an association or connection with

Med-Systems.  *Id*. at 5.  Dr. Ford determined that a 0.6% likelihood of confusion was

not statistically significant.  *Id*.  Based on the survey results, Dr. Ford concluded that

"there is no confusion nor is there any likelihood of confusion between the SinuSense™

and Sinu*Cleanse*® marks or trade dress."  *Id*.

Med-Systems does not provide an expert opinion with regard to confusion

between the SinuSense™ and the Sinu*Cleanse*® marks.  Instead, Med-Systems

endorses a rebuttal report prepared by Michael A. Belch.  *See* Docket No. 95-11.  Med-

Systems claims that Dr. Belch's examination of Dr. Ford's report proves that Dr. Ford's

survey is unreliable.  Docket No. 95 at 17.  In the summary of his expert rebuttal, Dr.

Belch states: "[g]iven that the purpose of the research was to determine *brand* name

confusion, the fact that the brand names were not even addressed renders this study to

be of little or no value . . . the overall focus on *companies* as opposed to *brand* names

and the non inclusion of the SinuCleanse product are the primary factors that lead me

to believe that the Ford study cannot be considered valid for purposes of *determining brand name confusion*." Docket No. 95-11 at 4 (emphasis in original). Upon review of Dr. Belch's rebuttal report, it is clear that it does not undermine the reliability of Dr. Ford's study.

Dr. Belch's criticism stems from the erroneous belief that a survey to test consumer confusion should focus on the brand names and not the names of the companies. However, the question in this case is not related to a product's brand name; rather, the confusion analysis focuses on whether actual or potential consumers who view the SinuSense™ mark are likely to believe the product was sponsored, endorsed, or came from the same source as Sinu*Cleanse*® products. *See John Allan Co.,* 540 F.3d at 1138 ("confusion results when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product"). Given that Dr. Belch focuses his criticism on a mistaken understanding of the law, it is evident that the rebuttal, by itself, does not undermine Dr. Ford's survey. Moreover, because Med-Systems does not provide any other evidence, the record is devoid of any genuine dispute of fact as to the validity of Dr. Ford's results. Accordingly, because the undisputed evidence shows only de minimis actual confusion and a likelihood of confusion of 0.6%, this factor weighs in favor of Water Pik.

### 4.  *Similarity of Products and Manner of Marketing*

The marketing practices of the parties are relevant in a trademark infringement case because these practices impact the way in which consumers experience the parties' respective marks. *Heartsprings*, 143 F.3d at 556. The greater the similarity

between the products and services, the greater the likelihood of confusion.  *Id*. Similarly, the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion.  *Id*.  In analyzing the similarity in the manner of marketing, the Tenth Circuit has considered whether the parties were competitors in consumer markets; whether the goods were sold in distinctly different markets; whether the parties contacted different people in their marketing efforts; and whether the parties sold distinctly different products.  *Id*. at 557.

In this case, both parties sell essentially the same products: neti pots, saline refills, and squeeze bottles.  Moreover, although there is no evidence that the products are sold in the same stores, both parties sell their products out of similar retail outlets, including Walgreens, CVS, and Rite Aid.  They also advertise through some of the same venues, such as trade shows, print media, television, and the internet, Docket No. 95 at 13, and they target the same general population, namely sinusitus sufferers and those likely to use sinus irrigation products.

Water Pik argues that, although both parties sell sinus irrigation products, the two products are dissimilar because of differences in product design.  Docket No. 63 at 13.  Additionally, Water Pik argues that a consumer's ability to confuse products is negated because the parties' products are not sold side-by-side in the same stores.

Water Pik's reliance on the improvements to its product design is overly technical for purposes of the likelihood of confusion test.  *Universal Money Ctrs.*, 22 F.3d at 1532.  The similarity between products is not focused on form; rather, it looks to the function of the products.  In this case, it is undisputed that both sets of products perform functions related to the treatment of sinuses.  Moreover, whether the products are sold

19

in the same stores is irrelevant, as none of the precedential cases require that the junior user's product be available in the same stores as the senior user's goods.  *See Sally Beauty Co.,* 304 F.3d at 975 ("[n]one of our cases, however, require that the allegedly infringing product be available [in] the same [stores] as the plaintiff's product.").  Consequently, because both parties operate in similar retail outlets, contact similar consumers in their marketing efforts, and sell similar sinus irrigation products, this factor weighs in favor of Med-Systems.

### 5.   Degree of Care Exercised by Consumers

A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusing similar trade names.  *Heartsprings*, 143 F.3d at 557.  The relevant inquiry focuses on the consumer's degree of care exercised at the time of the purchase.  *See Universal Money Ctrs.,* 22 F.3d at 1533.  Generally, "buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse."  *Beer Nuts I*, 711 F.2d at 941.

Water Pik contends that, with regard to sinus irrigation products, consumers exercise a high degree of care when making purchases.  Docket No. 63 at 13.  Water Pik states that, because the sinus irrigation products at issue are often recommended to consumers by their health care providers, are found in the pharmacy section of stores, and are considered to be medically related, consumers do not purchase these products impulsively.  *Cf. Spectrum Vision Sys., Inc. v. Spectera, Inc.*, 35 F. Supp. 2d 797, 807 (D. Kan. 1998) (finding that high-level employees exercise a high degree of care when deciding whether to purchase a vision care plan).  Furthermore, Water Pik

claims that the Lynx Report found that the decision to use sinus irrigation products is often thorough and deliberate.  *See Sally Beauty Co., Inc.*, 304 F.3d at 975 (the more impulsive a buy, the less likelihood of careful deliberation before purchasing the item). Because Med-Systems does not dispute this fact, this factor weighs in favor of Water Pik.

### 6.   Strength or Weakness of the Mark

The stronger a trademark, the more likely that encroachment upon it will lead to sponsorship confusion.  *See Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1226 (D. Colo. 2001).  "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties."  *Id*.  To assess the relative strength of a mark, one must consider two aspects of strength: (1) conceptual strength: the placement of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum; and (2) commercial strength: the marketplace recognition value of the mark.  *Id.*

### a.   Conceptual Strength

The categories of trademarks in ascending order of relative strength are: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; (5) fanciful.  *Sally Beauty Co.,* 304 F.3d 975-76.  A generic mark refers to a general class of goods, such as "cola," of which an individual article is but a member.  *Beer Nuts I*, 711 F.2d at 939.  Such marks do not indicate the particular source of an item and are not entitled to any trademark protection.  *Id*.  A descriptive mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients.  *Id*.  A descriptive

mark may receive protection "only if it has acquired a secondary meaning by becoming distinctive of the applicants goods in commerce." *Id*. at 940 (quotation omitted). Suggestive marks "suggest[ ] rather than describe[ ] a characteristic of the product and require[ ] the consumer to use imagination and perception to determine the product's nature." *First Sav. Bank*, *F.S.B. v. First Bank Sys., Inc.,* 101 F.3d 645, 655 (10th Cir. 1996). Arbitrary marks use common words, symbols, and pictures that do not suggest or describe any quality or characteristic of the goods or services. *King of the Mountain Sports*, 185 F.3d at 1093. Finally, fanciful marks are words invented or selected for the sole purpose of functioning as a trademark. *Id*. Suggestive, fanciful, and arbitrary marks are considered inherently distinctive and are entitled to trademark protection. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

The categorization of a mark is a factual question. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (citation omitted). Notably, the factfinder's own perception of the mark is not the object of the inquiry; rather, the factfinder's function is to determine, based on the evidence before it, what the perception of the purchasing public is. *Id.*

Med-Systems alleges the Sinu*Cleanse*® mark is entitled to heightened protection because the mark is suggestive, arguing that, after a consumer sees the Sinu*Cleanse*® mark, he is required to "use [his] imagination and perception to determine the product's nature." Docket No. 95 at 14. However, it is undisputed that both Mr. Gallo and Dr. Heatly believed that, in selecting Sinu*Cleanse*®, they chose the mark because it "described better the cleaning or cleansing process." Docket No. 95-1

at 4 (Heatly Dep. 12:16-21).  Therefore, despite Med-Systems' arguments to the contrary, the undisputed evidence establishes that Sinu*Cleanse*® is primarily a descriptive mark because it identifies the products' function.

For descriptive marks to receive protection under the Lanham Act, the mark must have acquired a secondary meaning.  *Donchez*, 392 F.3d at 1218.  In other words, the public must view the mark, not as descriptive, but as identifying the source of the product.  *Id*.  Generally, whether a term has acquired secondary meaning depends on (1) the length and manner of its use; (2) the nature and extent of the plaintiff's advertising, promotions, and sales; and (3) the plaintiff's efforts to promote a conscious connection in the public's mind between the mark and a particular product.  *Donchez*, 392 F.3d at 1218; *accord Am. Tel. v. Am. Commc'n,* 810 F.2d 1546, 1548 (11th Cir. 1987) (identifying the same factors as *Donchez* and also including the extent to which the public actually identifies the name with plaintiff's product).  A high degree of proof is needed to establish the secondary meaning of a descriptive term.  *Am. Tel.*, 810 F.2d at 1548; *Metro Brokers, Inc. v. Tann*, 815 F. Supp. 377, 385 (D. Colo. 1993).  Once a mark obtains incontestable status, its validity cannot be challenged.  15 U.S.C. § 1115(b).  But the fact that a trademark is the subject of federal registration that has ripened into incontestable status does not dictate the conclusion that the mark is strong with no further analysis.  *See Coherent,* 935 F.2d at 1125 ("incontestability does not relieve the owner of an incontestable registration from the burden of proving likelihood of confusion.") (citation omitted).

To establish secondary meaning, Med-Systems relies on evidence showing that it has used the mark "Sinu*Cleanse*" continuously since 1997, has spent approximately 30% of its total sales on marketing and advertising since 1997, and was the subject of a segment on the Oprah Winfrey television show in December 2007.  Docket No. 95 at 14.  This evidence is uncontested.  However, by itself this evidence does not constitute the high degree of proof necessary to establish secondary meaning.  *See Am. Tel.*, 810 F.2d at 1548.  There is no evidence of consumer survey results or testimonial evidence as to secondary meaning.  *Id.* at 1549 (affirming summary judgment based, in part, on plaintiff's failure to prove secondary meaning and noting lack of surveys or other quantitative evidence); *see J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985) (upholding a district court's finding that alphanumeric symbols had not acquired secondary meaning because appellant failed to provide market survey data or other empirical evidence).  Thus, the Court will now consider the mark's commercial strength.

### b.  Commercial Strength

Under the commercial strength inquiry, a court looks at the marketplace to determine if a "*substantial number* of present or prospective customers understand the [mark,] when used in connection with a business, to refer to a particular person or business enterprise."  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1179 (D. Utah 2010) (emphasis in original).  Extensive use of a mark by third parties undermines its commercial strength.  *University of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1253 (D. Kan. 2008); *First Sav. Bank*, 101 F.3d at 653-54.  The greater the

24

number of identical or more or less similar trademarks already in use on different kinds of goods, the less the likelihood of confusion between any two specific goods.  *Id*.

It is undisputed that Med-Systems' mark is comprised of two generic terms–sinu and cleanse–which, when combined together, create the descriptive mark "Sinu*Cleanse*."  Moreover, it is undisputed that the use of the generic term "sinu" is ubiquitous in the sinus irrigation market, Docket No. 57-1 at 22-34, and that Med-Systems will not challenge a mark utilizing only the word "sinu."  Docket No. 57-5 at 5-6 (Gallo Dep. 62:17-63:3).  Given this fact, the strength of Med-Systems' mark is weakened by third parties use of an identical word to make similarly descriptive marks.  *See 1-800 Contacts*, 755 F. Supp. 2d at 1179.  The pervasive use of the prefix "sinu" lessens the likelihood of confusion between SinuSense™ and Sinu*Cleanse*®.  *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 497 F. Supp. 2d 1221, 1231 (D. Kan. 2007) ("When determining commercial strength, the court considers the number of identical or more or less similar marks already in use").  While Med-Systems' mark must be viewed as a whole, rather than by its parts, this does not nullify the fact that others use the prefix "sinu" to market their products.  *1-800 Contacts*, 755 F. Supp. 2d at 1179.

In summary, Med-Systems has provided some evidence of conceptual strength but not sufficient evidence to establish secondary meaning.  Moreover, third party usage of the prefix "sinu" gives the mark little commercial strength.  Accordingly, the facts regarding the strength of the mark favor Water Pik.

### 7.   Summary Judgment is Appropriate

In conclusion, four of the six factors used to determine a likelihood of confusion favor Water Pik.  However, the determination of a likelihood of confusion requires more than counting the number of factors in favor of each side.  It requires the Court to take into account the proper weight that each factor should be assigned.  *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649-650 (11th Cir. 2007); *Heartsprings,* 143 F.3d at 558 (finding that, because no single factor is dispositive, all relevant factors must be weighed, properly analyzed and considered together for a court to determine the likelihood of confusion).  In this regard, the similarity of the marks and evidence of actual confusion is given great weight.  *See Sally Beauty Co.*, 304 F.3d at 973; *King of the Mountain Sports*, 185 F.3d at 1091 (noting that similarity of the marks is the most important factor); *Hi-Tech Pharms., Inc. v. Herbal Health Prods., Inc.*, 132 F. App'x 348, 350 (11th Cir. 2005) (per curiam) (type of mark and actual confusion are "most weighty" considerations) (citation omitted).  Here, the lack of similarity between the words "Cleanse" and "Sense," the lack of anything other than de minimis evidence of actual confusion, and the results of the Ford survey showing that one person out of 164 believed that SinuSense had an association with Med-Systems, in combination with the other evidence discussed above, make summary judgment appropriate in this case.  Recovery under the Lanham Act requires, at a minimum, "that confusion, mistake, or deception be 'likely,' not merely 'possible.'" *Custom Mfg.,* 508 F.3d at 649-650, quoting *Sears Roebuck & Co. v. All States Life Ins. Co.*, 246 F.2d 161, 168 (5th Cir. 1957).  Here, Water Pik has carried its burden on summary judgment in

demonstrating that there is no genuine issue of material fact that any such likelihood of confusion exists with regard to Med-Systems' counterclaims for trademark infringement and federal unfair competition.   Therefore, the Court finds that Water Pik is entitled to summary judgment with regard to these counterclaims.

### B.   Trade Dress Infringement

Section 43(a) of the Lanham Act provides a federal cause of action for trade dress infringement.   *See* 15 U.S.C. § 1125(a).   The term trade dress refers to the overall appearance of a product.   *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988).   A "trade dress may be a composite of several features in a certain arrangement or combination which produces an overall distinctive appearance."   *Id*. at 1272.   Trade dress "may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques."   *Sally Beauty Co.,* 304 F.3d at 977.   "Under § 43(a) of the Lanham Act, a plaintiff has a cause of action against any person whose use of a word, symbol or device is likely to cause confusion regarding the source or origin of the plaintiff's goods."   *Id*. (citing 15 U.S.C. § 1125(a)(1)(A); *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209 (2000)).   Protection may extend to a single feature or a combination of features in a trade dress.   *See Vornado Air Circulation Sys.*, *Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995).   In order to demonstrate trade dress infringement for product packaging, a party must demonstrate: (1) that its trade dress is inherently distinctive or has become distinctive through secondary meaning; and (2) that customers are likely to be confused by the infringer's trade dress.   *Id*. at 1502-03.   In addition, the party

asserting trade dress infringement bears the burden of demonstrating that the trade dress is not functional.  *Samara Bros.,* 529 U.S at 210.

### 1.  Inherently Distinctive

A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source."  *Two Pesos,* 505 U.S. at 768.  "Such trade dresses 'almost *automatically* tell a customer they refer to a brand and immediately signal a brand or a product source.'"  *Sally Beauty Co.,* 304 F.3d at 977.  Marks that are inherently distinctive include those which are suggestive, arbitrary, or fanciful.  *Two Pesos*, 505 U.S. at 768.  Marks which are merely descriptive are not inherently distinctive but may acquire distinctiveness through secondary meaning.  *Id*. at 769.

Med-Systems asserts that its trade dress includes the mark "Sinu*Cleanse®,*" graphics illustrating a clear blue neti pot with a stream of water running through it, the words "clear blue neti pot," and the statement "easier to use because you can actually see the wash."  Docket No. 95 at 15.  Med-Systems argues that this trade dress is suggestive because it requires a consumer to think about, perceive, and imagine what kind of product a neti pot could be.  *Id*. at 16.  According to Med-Systems, a consumer must imagine how water and salt could be used together to provide sinus relief.  *Id*.

Water Pik argues that, because blue and white colors, as well as streams of water, are common to sinus irrigation products, Med-Systems' design cannot be inherently distinctive.  Docket No. 63 at 16.  Moreover, Water Pik argues that, because Med-Systems' trade dress merely demonstrates how the product functions, it is primarily descriptive.  Docket No. 112 at 8.  Water Pik states that it is undisputed that,

when using a neti pot, water pours out of the tip of the pot exactly as depicted on Med-Systems' alleged trade dress.  *Id.*

A descriptive trade dress "conveys an immediate idea of the ingredients, qualities or characteristic of the goods."  *Sally Beauty Co.*, 304 F.3d at 977.  Taking Med-Systems' trade dress as a whole, it is evident that it is descriptive in nature.  First, the name Sinu*Cleanse*® explains to the consumer that the product's main function is to cleanse your sinuses.  Second, the stream of water running through the neti pot immediately conveys to a consumer one of the main ingredients required to use the device.  Finally, the combination of the "clear blue neti pot" language and the demonstration of the water running through the pot shows the product's qualities: easy to use.  Thus, because Med-Systems' trade dress is descriptive and not inherently distinctive, the question of infringement turns on whether the trade dress has acquired a secondary meaning.

## 2.   *Secondary Meaning*

To establish secondary meaning, an owner must show that, over time, customers associate the primary significance of a trade dress feature with the source of the product rather than the product itself.  *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995).  Essentially, the plaintiff must show that, in the consumer's mind, a particular trade dress indicates a "single thing coming from a single sourse."  *Sally Beauty Co.,* 304 F.3d at 978.  To establish secondary meaning, a plaintiff may present circumstantial evidence regarding: (1) the length and manner of its use; (2) the nature and extent of the advertising and promotion of the trade dress; and (3) the

efforts made in the direction of promoting a conscious connection in the public's mind between the trade dress and a particular product.  *See Donchez*, 392 F.3d at 1218.

Med-Systems provides largely the same evidence it used to support the secondary meaning of its trademark, such as: (1) the use of 30% or more of its total sales on marketing and advertising; (2) the advertisement of its products through various forms of media; and (3) a feature on the Oprah Winfrey Show.  Docket No. 95 at 14.  Although this constitutes some evidence of secondary meaning, it falls far short of showing its trade dress "indicates a single thing coming from a single source."  *Sally Beauty Co.*, 304 F.3d at 978.

With respect to the length and manner of use of Med-Systems' trade dress, there is undisputed evidence that Med-Systems' trade dress has changed consistently beginning in 2007.  When Med-Systems was created in 1997, it utilized a trade dress which did not portray a stream of water but had wavy lines incorporated into a blue and red theme with the "sinu" prefix written in red block lettering.  *See* Docket 57-2 at 9 (Gallo Dep. 186:7-10); Docket No. 57-2 at 25.  Med-Systems continued to use this trade dress until 2007 when it began working with Masterson to provide the Sinu*Cleanse*® line with a new look.  Docket No. 57-5 at 40.  In late 2008, Med-Systems changed its trade dress, by changing the "sinu" prefix from red font to blue font.  Docket No. 57-2 at 15 (Gallo Dep. 194:11-13); Docket No. 57-4 at 9.  The late 2008 packaging also did not contain a stream of water.  *See id*.  Sometime in 2010 Med-Systems again released a new design for its neti pot trade dress.  Docket No. 57-1 at 10-11 (Heatly Dep. 39:18-40:10); Docket No. 57-1 at 37.  Based on the date of Dr. Heatly's

deposition, the new trade was released prior to October 10, 2010. *See id*. This new trade dress is not the trade dress Med-Systems claims has acquired secondary meaning because it lacks the words "clear blue neti pot" and "easier to use because you can actually see the wash." *See id*. Based on the undisputed evidence, it appears that Med-Systems' trade dress was utilized for a period of at most a year between 2009 and 2010.

The evidence shows that Med-Systems' use of its trade dress has not been consistent and therefore does not support a finding of secondary meaning. *See General Motors Co. v. Urban Gorilla, LLC*, 2010 WL 5395065, at *5 (D. Utah Dec. 27, 2010) (finding the use of the same trade dress for over 20 years supported a determination of secondary meaning). Moreover, Med-Systems' generalization that it uses 30% of its advertising to promote its trade dress is not persuasive. Because Med-Systems' usage of its trade dress has been inconsistent, Med-Systems' advertising does not allow a consumer to view a particular trade dress as a "single thing coming from a single sourse." *Sally Beauty Co.*, 304 F.3d at 978. Finally, one appearance on the Oprah Winfrey Show may be enough to show that the public was exposed to the Med-Systems' mark in a way that promotes a conscious connection in the public's mind between the mark and a particular product; however, this does not hold the same for the trade dress. A consumer viewing the mark "Sinu*Cleanse®*" can recognize that mark regardless of the trade dress, but a consumer witnessing constant changes to Med-Systems' trade dress will not necessarily associate any single trade dress with the product. Accordingly, because Med-Systems' trade dress was not used

for a lengthy period of time and because Med-Systems does not provide survey evidence to establish secondary meaning, it is evident that Med-Systems' trade dress has not acquired a secondary meaning. *see J.M. Huber Corp.*, 778 F.2d at 1470.

Med-Systems has failed to show that its trade dress is inherently distinctive or has acquired secondary meaning.  Therefore, because there are no genuine issues of material fact with regards to Med-Systems' trade dress, Water Pik is entitled to summary judgment on Med-Systems' counterclaim for trade dress infringement.

### C.   Trademark Dilution

The Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c), entitles the owner of a famous and distinctive trademark to injunctive relief against "another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution." 15 U.S.C. § 1125(c).  For the purposes of dilution, a mark is famous if it "is widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A).  Courts consider four factors in determining whether a mark is famous: (1) duration, extent, and geographic reach of advertising and publicity of the mark; (2) amount, volume, and geographic extent of sales; (3) extent of actual recognition of the mark; and (4) whether the mark was registered. *Id*.

Med-Systems argues that Sinu*Cleanse*® is a famous mark known by the general public and, in support, cites the deposition testimony of Patricia Springer.  Docket No. 95 at 18.  However, Ms. Springer is not representative of the general public.  Ms. Springer was the executive assistant to Richard Bisson, Water Pik's CEO, and she first

learned of Sinu*Cleanse*® as part of her job duties for Mr. Bisson.  Docket No. 112-4 at

1, ¶ 3.  Med-Systems does not provide any other evidence with regard to how famous

the Sinu*Cleanse*® mark is with the "general consuming public."  15 U.S.C.

§ 1125(c)(2)(A); *see General Motors Co.,* 2010 WL 5395065 at *5 (finding that a mark

was famous because the company spent hundreds of millions in advertising world-wide,

received $2 billion in revenue annually by licensing its product, and a survey found that

71% of participants could identify the company from its marks and trade dress).

The evidence provided by Med-Systems does not demonstrate that it has

achieved a significant degree of fame.  Even when read in the light most favorable to

Med-Systems, the evidence shows at best that Med-Systems' trade dress may have

established a degree of fame in the niche sinus irrigation market.  However, the 2006

amendments to the TDRA have rendered niche market fame irrelevant.  *See Gennie*

*Shifter, LLC v. Lokar, Inc.*, No. 07-cv-01121-JLK-MJW, 2010 WL 126181, at *19 (D.

Colo. Jan. 12, 2010).  Without proof that the marks have achieved fame that extends to

the general consuming public, Med-Systems' trade dress is not entitled to protection.

Accordingly, because Med-Systems has failed to raise a triable issue as to whether its

trade dress is famous, Water Pik is entitled to summary judgment on Med-Systems'

counterclaim for trademark dilution.

Upon granting summary judgment to Water Pik with regard to all of

Med-Systems' counterclaims, all that will remain in this action are Water Pik's claims

seeking declaratory judgment.  These declaratory judgment claims are mirror images of

Med-systems' counterclaims and do not seek different relief or raise dissimilar legal

issues.  Accordingly, having determined that there are no further factual disputes in this

case with regards to trademark infringement, federal unfair competition, trade dress infringement, and trademark dilution, the Court finds that Water Pik's claims for declaratory judgment no longer present a live controversy and thus, are moot. *See U.S. v. City of Las Cruces*, 289 F.3d 1170, 1880 (10th Cir. 2002) (noting that under the Declaratory Judgment Act, district courts are under no compulsion to grant declaratory relief, but may do so at their discretion); *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1109 (10th Cir. 2010) ("[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute") (citation omitted).

## V.  CONCLUSION

Accordingly, it is

**ORDERED** that Med-Systems' Motion to Supplement the Record and to Supplement Med-Systems' Brief in Opposition to Water Pik's Corrected Motion for Summary Judgment [Docket No. 126] is **GRANTED**.  It is further

**ORDERED** that Med-Systems' Motion to Supplement the Record and to Supplement Med-Systems' Brief in Opposition to Water Pik's Corrected Motion for Summary Judgment [Docket No. 155] is **GRANTED**.  It is further

**ORDERED** that Water Pik Inc.'s Corrected Motion for Summary Judgment as to all of Med-Systems' Counterclaims [Docket No. 63/65] is **GRANTED**.  It is further

**ORDERED** that those pending motions which relate only to Water Pik's declaratory judgment claims [Docket Nos. 163, 164, 165, 210, 217, 218, 222] are **DENIED** as moot.  It is further

**ORDERED** that final judgment shall enter against defendant Med-Systems, Inc. and in favor of plaintiff Water Pik, Inc. with regard to Med-Systems' counterclaims.  It is further

**ORDERED** that Water Pik's declaratory judgment claims shall be **DISMISSED** as moot.  It is further

**ORDERED** that Water Pik shall have the right to register and use the SinuSense™ mark.  It is further

**ORDERED** that the jury trial scheduled for February 6, 2012 is **VACATED**.

DATED January 25, 2012.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge